## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION

| | | |
|---|---|---|
| LUZ HERNANDEZ, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | Case No.:5:20-cv-00504 |
| v. | ) | |
| | ) | **COMPLAINT** |
| MOBILE LINK (N.C.) LLC, | ) | |
| MOBILELINK NORTH CAROLINA | ) | |
| LLC, | ) | |
| | ) | |
| *Defendants.* | ) | |

Plaintiff Luz Hernandez, by and through her undersigned counsel, hereby sets forth this action against Defendants Mobile Link (N.C.) LLC and Mobilelink North Carolina LLC (hereinafter "Defendants"), and alleges as follows:

### PRELIMINARY STATEMENT

1.     This action arises out of Defendants' systemic and willful failure to compensate Plaintiff for all hours worked, and for overtime hours worked at the appropriate overtime rate, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1, *et seq.*, and for race-based discrimination, harassment, and wrongful termination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et. seq*, and North Carolina Public Policy.

2.     Plaintiff worked as a store manager for Defendants and was compensated on an hourly basis.  Throughout the relevant period, Defendants maintained a corporate policy

1

of failing to compensate Plaintiff for all of her regular and overtime hours worked. Plaintiff typically worked 47 to 48 hours per week as a Store Manager. However, due to technical issues with the computer/mobile application Defendants required her to use as a time clock to clock in and out, Plaintiff's time was frequently not recorded correctly. Despite Plaintiff's efforts to follow Defendants' protocol to correct these inaccuracies and properly record all of her hours worked, Plaintiff's managers' failures to properly correct her time further led to an inaccurate recording of Plaintiff's hours worked.

3.     Defendants, through their managers, were aware of Plaintiff's issues with the timekeeping system and that her recorded hours were frequently inaccurate and grossly undercounted the number of hours she actually worked each week. Despite Defendants' inaccurate records stating otherwise, Defendants suffered or permitted, and in fact, required Plaintiff to work hours in excess of forty (40) hours per week.

4.     Defendants' practice of failing to compensate Plaintiff for all hours worked violated Plaintiff's rights under the FLSA and NCWHA.

5.     Defendants are liable for their failure to pay Plaintiff for all work performed, and at the appropriate overtime rate for hours worked in excess of forty (40) per week.

6.     Plaintiff seeks compensation at the appropriate straight time rate for all hours worked up to forty (40) per week, at the appropriate overtime rate for all hours worked in excess of forty (40) per week, an equal amount of liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

7.     Plaintiff also brings this action under the NCWHA. Plaintiff, who is a North

Carolina resident and who worked for Defendants in North Carolina, asserts that she is entitled to compensation for all work performed for Defendants whether the work week totaled greater or fewer than forty (40) hours, compensation at the appropriate regular or promised rate for hours worked less than 40 per week and/or overtime rate for all hours worked in excess of forty (40) per week, an equal amount of liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to N.C. Gen. Stat. §§ 95-25.6, 95-25.22(a), (a1), and (d).

8.     Additionally, throughout the relevant period, Defendants failed to compensate Plaintiff for all of her promised sick days and vacation pay, and also failed to pay Plaintiff a promised $300 incentive for each new manager she trained, in violation of the NCWHA, N.C. Gen. Stat. §§ 95-25.2(16), 95-25.6, 95-25.12, 95-25.13.

9.     Plaintiff, who is a North Carolina resident and who worked for Defendants in North Carolina, asserts that she is entitled to compensation for any earned and accrued unpaid wages for hours worked at the appropriate straight, promised, or overtime rates for hours worked at either less than or in excess of forty (40) per week and/or any unpaid promised compensation, and to an equal amount of liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to N.C. Gen. Stat. §§ 95-25.8, 95-25.6, 95-25.13, 95-25.22(a), (a1), and (d).

10.    Plaintiff also brings this action for racial discrimination in the form of a hostile work environment and wrongful termination pursuant to Title VII, 42 U.S.C. § 2000e, *et. seq*, and North Carolina Public Policy.

3

## JURISDICTION AND VENUE

11.     The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, based upon the claims brought under the FLSA, 29 U.S.C. § 201, *et seq*., and under Title VII, 42 U.S.C. § 2000e, *et. seq*.

12.     Additionally, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the pendent state law claims under the NCWHA, because those state law claims arise out of the same nucleus of operative fact as the FLSA claims.

13.     The United States District Court for the Eastern District of North Carolina has personal jurisdiction because Defendant's primary place of business in North Carolina is in Wake County, which is located within this District.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), inasmuch as Defendants conduct business and can be found within the Eastern District of North Carolina.

15.     All of the alleged causes of action can be determined in this judicial proceeding and this will provide judicial economy, fairness, and convenience to the parties.

## PARTIES

16.     Plaintiff is an adult resident of North Carolina, currently living in Raleigh. She worked as a store manager for Defendants at their Crossroads of Cary location in Cary, North Carolina, from approximately September 15, 2014, until April 11, 2020.

17.     Defendant Mobile Link (N.C.) LLC, is a North Carolina limited liability corporation formed in 2011, with its principal place of business located at 12501 Reed

4

Road, Sugar Land, Texas 77478-1409. Defendant Mobile Link (N.C.) LLC's registered agent in North Carolina is InCorp Services, Inc., with an address of 176 Mine Lake Court, Suite 100, Raleigh, NC 27615-6417.

18.     Defendant, Mobilelink North Carolina LLC, is a North Carolina limited liability corporation formed in 2019, with its principal place of business located at 12501 Reed Road, Sugar Land, Texas 77478-1409. Defendant Mobilelink North Carolina LLC's registered agent in North Carolina is InCorp Services, Inc., with an address of 176 Mine Lake Court, Suite 100, Raleigh, NC 27615-6417.

19.     Upon information and belief, Defendants are subsidiaries or affiliates of the national Mobilelink USA, which has its headquarters located at 12501 Reed Road, Sugar Land, Texas 77478-1409.

20.     Defendants own and operate retail locations which are in the business of selling Cricket Wireless telecommunications products and services, among other products and services.

21.     According to its website, Mobilelink USA is affiliated with or owns and operates approximately 150 retail locations across the USA, including approximately twenty-five (25) in North Carolina.

## **COVERAGE**

22.     At all times material to this action, Defendants have acted, directly or indirectly, in the interest of an employer or joint employer with respect to Plaintiff.

23.     At all relevant times, Defendants were employers within the meaning of the

5

FLSA, 29 U.S.C. § 203(d) the NCWHA, N.C. Gen. Stat. § 95-25.2(5), and Title VII, 42 U.S.C. § 2000e(b).

24.     At all relevant times, Plaintiff was an employee engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206, 207.

25.     At all times material to this action, Defendants were an enterprise engaged in related activities performed through a unified operation or common control for a common business purpose, as defined by the FLSA, 29 U.S.C. § 203(r).

26.     At all times material to this action, Defendants were an enterprise engaged in commerce or the production of goods for commerce as defined by the FLSA, 29 U.S.C. §§ 203(s), 203(r), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000.

## WAGE-RELATED FACTUAL ALLEGATIONS

27.     Plaintiff worked for Defendants as a store manager, or in similar positions, during the relevant period. Plaintiff was an hourly non-exempt employee, and her final wage rate was $15.00 per hour, plus commissions.

28.     Defendants, in their sole discretion, controlled Plaintiff's work schedule and rate of pay.

29.     Throughout Plaintiff's employment, Defendants repeatedly changed the

6

commission policy. At the beginning of her employment, Plaintiff received personal commission almost every month because the store grossed high in sales. However, after Plaintiff asked for a raise, (after not receiving one for two years), her District Manager told her that the company was going to change her pay. At first, Plaintiff's District Manager led her to believe that her raise was in the process of going through; however, after she asked a second time, he told her they were going to stop paying her on an hourly basis, and she would no longer receive a personal commission.

30.    Despite being a store manager, nearly every decision and document made by Plaintiff had to be approved by her District Manager, including hiring decisions. In other words, Plaintiff did not exercise any judgment or discretion, and despite making recommendations for hiring or firing individuals, such recommendations were rarely, if ever, considered.

31.    On average, Plaintiff worked six (6) days per week, approximately 47 to 48 hours per week.

32.    While Plaintiff was allowed to take a 30-minute break, this break would be interrupted almost daily, thus forcing Plaintiff to work on her breaks. Plaintiff was informed by Defendants that this 30-minute lunch break was automatically deducted from her recorded time every workday.

33.    Plaintiff was not paid for all of her hours worked, including overtime.

34.    Upon arriving to and leaving from work, Plaintiff would clock in/out using Defendants' timekeeping application, called the "ADP App," on her phone. However, due

to technical issues with the ADP App, Plaintiff had to consistently submit a lot of "time corrections" because she and other employees' time was not recorded properly for numerous shifts.

35.     The ADP App contained numerous technical faults, including giving an error message causing employees' time not to be recorded properly.

36.     Any time corrections submitted by Plaintiff or other employees would have to go to the District Manager, and the District Managers were supposed to send the corrections to Human Resources for such changes to be accurately reflected in the time records.

37.     However, Plaintiff's District Managers would frequently fail to send Plaintiff's time corrections to Human Resources, and when Plaintiff confronted management about such failures, management made excuses as to why they were not sent. Despite requests to have Human Resources intervene, Human Resources would not intervene to resolve these issues.

38.     As a result of the ADP App's unstable functionality and Defendants' failure to correct her time, Plaintiff's recorded time did not reflect her actual hours worked.

39.     This resulted in Plaintiff being paid pursuant to the incorrect time that the faulty ADP App recorded, rather than her actual time worked, resulting in Plaintiff receiving substantially less than the pay that she was entitled to.

40.     By failing to correct Plaintiff's incorrect recorded hours worked, which were inaccurate due to technical faults with the ADP App, Defendants maintained improper or

inaccurate records, in violation of the FLSA, 29 U.S.C. § 211(c).

41.     Additionally, there were several instances during her employment where Plaintiff called her District Manager to report she was too ill to go to work. While Plaintiff's District Manager would reassure her that she would be paid for the time, and that approval for the sick time was submitted, such approval would not be made.

42.     Despite her District Manager's assurances, Plaintiff never received her promised sick pay. For 2020 alone, Plaintiff is owed for approximately six (6) days of sick pay.

43.     Furthermore, Plaintiff's District Manager promised her that she would receive a $300 incentive for each new manager she trained. Plaintiff had to undergo training herself in order to properly train new managers. Pursuant to this promise, Plaintiff trained approximately four (4) new managers.

44.     However, when the District Manager who made this promise left, the new District Manager simply told Plaintiff that despite already training 4 managers, Defendants would not compensate her for such trainings. The new District Manager denied Plaintiff had ever been promised these incentives.

45.     During the last two years of her employment, Plaintiff was not paid for all of her vacation time. She was only paid for two weeks per year when she had accumulated three (3) weeks of vacation time.

## RACE-BASED DISCRIMINATION, HARASSMENT, AND WRONGFUL TERMINATION ALLEGATIONS

9

46.     At the time of her termination, Plaintiff and approximately five (5) other employees were either African American or Hispanic.

47.     The Mobile Link location in which Plaintiff managed had a high customer base of African Americans and Hispanics.

48.     In December 2019, Plaintiff's former District Manager, "Ali," stated to her that the store she worked in was "ugly" because there were too many blacks and Hispanics working there.

49.     Ali informed Plaintiff that he did not want to hire anymore blacks or Mexicans, and that he wanted "to change the face of the store," and that a manager should be white and/or that he needed a white person to be the manager.

50.     Ali, himself, was Indian and only wanted to see Caucasians or Indians in the store.

51.     Plaintiff made a complaint to Ali's supervisor regarding his racially charged comments and discrimination, but such complaints fell on deaf ears. Ali's supervisor did nothing to correct Ali's behavior or otherwise discipline him.

52.     Given such failures, Plaintiff contacted Defendants' Human Resources with her complaint, but she did not receive any assistance or resolution through that department either.

53.     Because her previous attempts to report the harassment and discrimination had been ineffective, Plaintiff did not attempt to report again.

10

54.    In January 2020, Plaintiff was working by herself when Ali came in and asked her why she was by herself. Plaintiff explained that employees either had the day off or called out sick. Plaintiff then asked Ali about the candidates that she had sent him to be hired. In fact, one of the Hispanic interviewees was waiting in the store when Plaintiff asked. In front of the interviewee, Ali reiterated that they were not going to hire more Mexicans or black people.

55.    Shortly thereafter, a new District Manager, Trey William Cooper, took over the district. Cooper hired a Caucasian Assistant Manager without consulting Plaintiff even though she already had an Assistant Manager who was African American.

56.    Cooper told Plaintiff that the new Assistant Manager told him every day that Plaintiff was bad at her job, but instead of actually evaluating her profit margins or other metrics which exceeded company expectations, Cooper constantly threatened Plaintiff with termination if she "screwed up."

57.    At the beginning of March 2020, Cooper demanded that Plaintiff hire his Caucasian female friend. Plaintiff responded by stating that it would cut other employees' hours. Cooper replied, "I'm not asking you, I'm telling you." When Plaintiff did not act quickly enough, Cooper hired his friend at a different store, and then he had his friend transferred to Plaintiff's store.

58.    Plaintiff worked with Cooper's friend for approximately one week before going on vacation. Cooper put his friend in charge of the store while Plaintiff was on vacation. Both Cooper and his Caucasian friend contacted Plaintiff while she was on

11

vacation, to taunt her that his friend was doing a better job at being store manager in just one week.

59.     The day before Plaintiff's vacation was over, Cooper contacted her to come into the store for a meeting. During the meeting, Cooper falsely accused Plaintiff of stealing money, and Cooper claimed to have a video of her, but when she asked to see it, they would not show it to her. Cooper also berated Plaintiff for hiring her daughter, despite Plaintiff having no role in hiring her daughter. In fact, Ali, Plaintiff's former District Manager, was the person responsible for hiring Plaintiff's daughter.

60.     This meeting culminated in Cooper terminating Plaintiff under the guise that Plaintiff stole money from Defendants, despite no proof, and also of hiring her daughter in violation of Defendants' policies, even though it was Plaintiff's District Manager who hired her daughter.

61.     Additionally, Plaintiff is aware that Defendants often pay Caucasian employees more than similarly situated minority employees.

62.     As a result of the repeated racially offensive statements directed at Plaintiff by her District Manager Ali, including telling Plaintiff that her store was "ugly" because there were too many minorities employed there; informing Plaintiff that he did not want to hire anymore blacks or Mexicans, that he wanted "to change the face of the store;" and that a manager should be white and/or that he needed a white person to be the manager, Plaintiff's conditions of employment were undoubtedly altered and she experienced an abusive work environment.

63. Because Plaintiff is herself a minority, and given Ali's position of authority over her, Plaintiff felt targeted, threatened, and discriminated against by Ali's racist conduct and rhetoric.

64. Plaintiff experienced a hostile work environment through the racist actions and statements of her supervisors and was wrongfully terminated on account of her race.

65. Through Plaintiff's experiences of repeated degrading and racially offensive comments directed at Plaintiff by her supervisors, commands from her supervisors to stop interviewing or submitting minority candidates for employment, inaction on Plaintiff's complaints to Defendants' managers and Human Resources of such conduct, and eventual termination of Plaintiff on account of her race, Defendants are liable to Plaintiff for hostile work environment and wrongful termination claims under Title VII.

66. On or about July 16, 2020, Plaintiff filed a charge of discrimination against Defendants with the United States Equal Employment Opportunity Commission.

67. Plaintiff has not yet received notice of her right to sue for racial discrimination, but pleads this claim at this time to promote judicial efficiency by filing all her claims in a single complaint, as the statute of limitations will continue to run on her wage-related claims until those claims are filed with the court. Plaintiff will promptly supplement her complaint with a right to sue letter when it is issued.

## FIRST CAUSE OF ACTION
### Violation of the Fair Labor Standards Act
### 29 U.S.C. § 201, *et seq.*

68. Plaintiff incorporates by reference all preceding paragraphs as if the same

13

were repeated here verbatim.

69. At all relevant times, Defendants have been, and continue to be, "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203.

70. At all relevant times, Defendants have employed, and continues to employ, "employee[s]," including Plaintiff, that have been, and continue to be, engaged in interstate "commerce" within the meaning of the FLSA, 29 U.S.C. § 203.

71. At all relevant times, Defendants have had gross operating revenues in excess of $500,000.

72. The FLSA, pursuant to §§ 206 and 207, requires each covered employer, including Defendants, to compensate all non-exempt employees at the applicable minimum wage rate for all hours worked, and at a rate of not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of forty (40) hours in a single workweek.

73. At all relevant times, Defendants, pursuant to their policies, practices, and use of the faulty "ADP app" timekeeping system, failed and refused to pay Plaintiff for all hours worked in violation of 29 U.S.C. § 211(c) and 29 C.F.R. § 516.2.

74. Defendants' failure to pay Plaintiff for all hours worked, despite the fact that, upon information and belief, Defendants knew of their obligations under the law, entitles Plaintiff to liquidated damages in an amount equal to the amount of unpaid wages under 29 U.S.C. § 216(b), since Defendants cannot show that they acted in good faith, and a three

14

(3) year, rather than two (2) year statute of limitations will apply, since Defendants' acts constitute willful violations of the FLSA, within the meaning of 29 U.S.C. § 255(a).

75.     As a result of Defendants' unlawful acts, Plaintiff has been deprived of appropriate compensation for all hours worked, and is entitled to recovery of such amounts, liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**Violation of the North Carolina Wage and Hour Act**
**N.C. Gen. Stat. § 95-25.1, *et seq*.**

76.     Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

77.     At all relevant times, Defendants employed Plaintiff within the meaning of the NCWHA.

78.     Pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.6, it is unlawful for an employer to "suffer or permit" an employee to work without paying all owed, earned, and accrued promised wages, on the employee's regular payday.

79.     The NCWHA includes in its definition of "wage," among other forms of compensation, "commissions, bonuses, and other amounts promised when the employer has a policy or a practice of making such payments."

80.     The NCWHA also requires, under N.C. Gen. Stat. § 95-25.7, that when an employee's employment is discontinued for any reason, the employee "shall be paid all wages due on or before the next regular payday."

15

81.     Under the same provision, § 95-25.7, wages based on bonuses or commissions "or other forms of calculation," "may not be forfeited unless the employee has been notified in accordance with G.S. 95-25.13 of the employer's policy or practice which results in forfeiture." N.C. Gen. Stat. § 95-25.13(3), referenced in § 95-25.7, requires that employers "[n]otify employees, in writing or through a posted notice maintained in a place accessible to its employees, at least 24 hours prior to any changes in prior wages."

82.     13 N.C. Admin. Code 12 § .0307(c) provides that any ambiguous policies and practices with respect to bonuses, commissions, and other forms of wage calculation "shall be construed against the employer and in favor of employees."

83.     Defendants employed Plaintiff within the State of North Carolina.

84.     At all relevant times, Defendants, pursuant to their policies, practices, and use of the faulty "ADP app" timekeeping system, failed and refused to pay Plaintiff all owed, earned, and promised wages, including for required work performed by Plaintiff, and at the appropriate overtime rate that Plaintiff is lawfully entitled to for hours worked in excess of forty (40) in a single workweek.

85.     Additionally, Defendants, pursuant to their policies and practices, failed and refused to pay Plaintiff for all of her promised and earned sick pay, vacation pay, and manager training incentives, in violation of the NCWHA, N.C. Gen. Stat. §§ 95-25.2(16), 95-25.6, 95-25.12, 95-25.13.

86.     As a result of Defendant's unlawful policies and practices, Plaintiff has been

16

deprived of compensation due and owing.

87.     Defendants' failure to pay Plaintiff all owed, earned, and promised wages, despite the fact that, upon information and belief, Defendants knew of their obligations under the law, entitles Plaintiff to liquidated damages in an amount equal to the amount of unpaid wages, under N.C. Gen. Stat. § 95-25.22(a1).

88.     As a result of Defendants' unlawful acts, Plaintiff has been deprived of all compensation due under the law, and is entitled to recovery of such amounts, liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to N.C. Gen. Stat. §§ 95-25.6, 95-25.22(a), (a1), and (d).

**THIRD CAUSE OF ACTION**
**Race Discrimination - Hostile Work Environment and Wrongful Termination**
**42 U.S.C. § 2000e *et seq.***

89.     Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

90.     Defendants are "employers" as defined by Title VII, 42 U.S.C. § 2000e(b), because they employ fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

91.     Plaintiff was repeatedly subjected to harassment and a hostile work environment in the form of unwelcome ridicule, abuse, humiliation, racially offensive comments, and beratement as a direct result of her race.

92.     Such discrimination and harassment was ongoing from December 2019 until Plaintiff was wrongfully terminated on April 11, 2020.

17

93. Such discrimination and harassment was based on Plaintiff's race, a protected status. Plaintiff's Caucasian co-workers and other Caucasian employees employed by Defendants were not treated in the same demeaning way that Plaintiff was treated.

94. Such discrimination and harassment was sufficiently severe and/or pervasive to alter the terms and conditions of Plaintiff's employment.

95. Such discrimination and harassment was unwelcome.

96. While Plaintiff informed her supervisors and Defendants' Human Resources department, they all failed to take any prompt corrective action upon hearing reports of Plaintiff's treatment; her District Manager Ali, in fact, even perpetuated the harassment.

97. Plaintiff engaged in a protected activity under Title VII when she reported race-based discrimination and harassment to Defendants' management and Human Resources.

98. Plaintiff was discharged under the false pretense that she stole money from Defendants, despite no proof, and also of hiring her daughter in violation of Defendants' policies, even though it was Plaintiff's District Manager who hired her daughter.

99. In reality, Plaintiff's discharge was the result of Defendants' race-based discrimination against her and retaliation for Plaintiff reporting the race-based discrimination and harassment she had previously experienced. Plaintiff's discharge constitutes wrongful termination in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1).

100. As a direct and proximate result of Defendants' violation of Plaintiff's rights

under Title VII, as alleged herein, Plaintiff has been injured and suffered damages, including lost income and benefits, loss of reputation, emotional distress and mental anguish, humiliation, inconvenience, and loss of enjoyment of life. Accordingly, Plaintiff is entitled to past pecuniary losses, interest, compensatory damages, and other relief provided for under Title VII.

101. Plaintiff is also entitled to reasonable attorney's fees and costs, pursuant to 42 U.S.C. § 2000e-5(k).

102. Additionally, since Defendants' violations of Title VII, as alleged herein, were intentional, willful, knowing and malicious, or with reckless indifference to Plaintiff's federally protected rights, Plaintiff is entitled to recover punitive damages from Defendants, pursuant to 42 U.S.C. § 1981a(b)(1).

<u>**FOURTH CAUSE OF ACTION**</u>
**Wrongful Discharge in Violation of North Carolina Public Policy**
**North Carolina Common Law**

103. It is the public policy of the State of North Carolina, as expressed in, *inter alia*, N.C. Gen. Stat. §§ 143-422.2, Article I, Section 1 of the North Carolina Constitution, and ubiquitously throughout the statutes and laws of this State, that employees be free from race-based harassment, discrimination and retaliatory treatment in their employment.

104. The termination of Plaintiff's employment, resulting from her complaints and suffering related to the acts of race-based discrimination and harassment was wrongful as against the public policy of the State of North Carolina.

105. Such termination proximately caused Plaintiff to suffer emotional distress

19

and other losses, as described above. Accordingly, Plaintiff is entitled to compensatory damages under North Carolina law, and interest pursuant to N.C. Gen. Stat. § 24-5(b).

106. Defendants' acts constituted willful, wanton, and malicious conduct, entitling Plaintiff to punitive damages pursuant to Chapter 1D of the North Carolina General Statutes.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff collectively pray that this Honorable Court:

1. Award Plaintiff actual damages for unpaid wages and liquidated damages equal in amount for the unpaid compensation found due to Plaintiff under the FLSA, U.S.C. § 216(b);

2. Award Plaintiff actual damages for unlawfully withheld wages and liquidated damages equal in amount as provided by the NCWHA, N.C. Gen. Stat. § 95-25.22(a), (a1);

3. Award Plaintiff attorneys' fees, costs, and interest pursuant to the FLSA, U.S.C. § 216(b), and pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.22(a), (d);

4. Award Plaintiff past pecuniary losses, interest, compensatory damages, and punitive damages, as a result of Defendants' violation of Title VII, pursuant to 42 U.S.C. § 1981a, and violation of North Carolina Public Policy, pursuant to Chapter 1D of the North Carolina General Statutes and N.C. Gen. Stat. § 24-5(b); and

5. Award Plaintiff pre-judgment interest; and

20

6.     Grant such further legal and equitable relief as the Court deems necessary and proper in the public interest.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted this September 25, 2020.

*/s/ Gilda A. Hernandez*
Gilda A. Hernandez (NCSB No. 36812)
Charlotte C. Smith (NCSB No. 53616)
Robert W.T. Tucci (NCSB No. 55014)
**THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC**
1020 Southhill Drive, Ste. 130
Cary, NC 27513
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
csmith@gildahernandezlaw.com
rtucci@gildahernandezlaw.com

*Attorneys for Plaintiff*