IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:20-CV-00504-M

| | | |
|---|---|---|
| LUZ HERNANDEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| MOBILE LINK (N.C.) LLC, and, | ) | |
| MOBILELINK NORTH CAROLINA, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on Defendants' "Partial Motion to Dismiss Plaintiff's First Amended Complaint for Failure to Exhaust Administrative Remedies" [DE 28]. Defendants contend that Plaintiff failed to exhaust her third claim for discrimination based on national origin and/or ethnicity. Plaintiff counters that these claims are reasonably related to her charge of discrimination filed with the Equal Employment Opportunity Commission ("EEOC") and, thus, she has sufficiently exhausted the required remedies. For the reasons that follow, Defendants' motion is granted.

I.      **Background**

      A.      Plaintiff's Factual Allegations

The following are relevant factual allegations (as opposed to statements of bare legal conclusions, unwarranted deductions of fact, or unreasonable inferences) made by the Plaintiff in the operative Amended Complaint (DE 24), which the court must accept as true at this stage of the proceedings pursuant to *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

Plaintiff worked as a store manager for Defendants at their Crossroads of Cary location in Cary, North Carolina, from approximately September 15, 2014, to April 11, 2020. At the time of her termination, Plaintiff and approximately five other employees were either African American, Hispanic, or Latino. Plaintiff identifies herself in the operative pleading as "Mexican Hispanic or Latino." Plaintiff managed a location that had a high customer base of African Americans, Hispanics, and Latinos. In December 2019, Plaintiff's former District Manager, "Ali," told her that the store she worked in was "ugly" because there were too many Blacks, Hispanics, and Latinos working there. Ali informed Plaintiff that he did not want to hire any more Blacks or Mexicans, he wanted "to change the face of the store," and a manager should be white and/or he needed a white person to be the manager. Ali, himself, was Indian and wanted to see only Caucasians or Indians in the store.

Plaintiff complained of discrimination to Ali's supervisor regarding his comments, but Ali's supervisor did nothing to correct Ali's behavior or otherwise discipline him. Plaintiff then contacted Defendants' Human Resources with her complaint, but she did not receive any assistance or resolution through that department either. Because her attempts to report Ali's conduct had been ineffective, Plaintiff made no further attempts.

In January 2020, Plaintiff was working by herself at the store when Ali came in and asked why she was by herself. Plaintiff explained that employees either had the day off or called out sick. Plaintiff then asked Ali about the candidates she had suggested he hire; at that time, one of the Hispanic interviewees was waiting in the store. In the presence of the interviewee, Ali reiterated that he was not going to hire more Mexicans or Black people.

Shortly thereafter, Trey William Cooper, took over management of the district. Cooper hired a Caucasian Assistant Manager without consulting Plaintiff, even though she already had an

2

Assistant Manager who was African American. Cooper informed Plaintiff that the new Assistant Manager told him every day that Plaintiff was "bad at her job," but rather than actually evaluate Plaintiff's profit margins or other metrics (which exceeded company expectations), Cooper threatened Plaintiff with termination if she "screwed up."

At the beginning of March 2020, Cooper demanded that Plaintiff hire his Caucasian female friend. Plaintiff responded that such hire would reduce other employees' hours. Cooper replied, "I'm not asking you, I'm telling you." When Plaintiff did not act quickly enough, Cooper hired his friend at a different store then had his friend transferred to Plaintiff's store. Plaintiff worked with Cooper's friend for approximately one week before going on vacation. Cooper put his friend in charge of the store while Plaintiff was gone. Both Cooper and his friend contacted Plaintiff while she was on vacation to taunt her, saying that his friend was doing a better job at being store manager in just one week.

The day before Plaintiff's vacation was over, Cooper asked her to come into the store for a meeting. During the meeting, Cooper accused Plaintiff of stealing money; he claimed to have a video, but when Plaintiff asked to see it, Cooper would not show it to her. Cooper also berated Plaintiff for hiring her daughter despite the fact that Plaintiff had no role in hiring her daughter. Ali, Plaintiff's former District Manager, was the person responsible for hiring Plaintiff's daughter. The meeting culminated in Cooper terminating Plaintiff's employment on the bases that Plaintiff stole money from Defendants and hired her daughter in violation of Defendants' policies. Plaintiff asserts that these bases are pretext for unlawful discrimination. Additionally, Plaintiff is aware that Defendants often paid Caucasian employees more money than minority employees.

B.      Procedural History

On or about July 16, 2020, Plaintiff filed a charge of discrimination against Defendants

with the EEOC, alleging violations of Title VII of the Civil Rights Act of 1964, as amended. The

charge reflects Plaintiff's selection of "race" as a basis for discrimination and contains essentially

the same allegations as those set forth above. *See* DE 29-1. The basis of "national origin" on the

form is not selected. *See id.* On December 7, 2020, the EEOC issued to the Plaintiff a Notice of

Right to Sue. Plaintiff initiated this action on September 25, 2020 and, upon receiving the Notice,

filed the operative First Amended Complaint on December 10, 2020.

## II.     Legal Standards

Defendants note that some courts have continued to address motions for failure to exhaust

Title VII administrative remedies under Fed. R. Civ. P. 12(b)(1). Mem., DE 29 at 3. However,

the Supreme Court in *Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1850, 204 L. Ed. 2d 116

(2019) held that "Title VII's charge-filing requirement is not of jurisdictional cast." Therefore,

analysis of a Title VII failure to exhaust is no longer proper under Rule 12(b)(1), and Defendants

correctly bring their motion pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a plausible

claim for relief.

When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all of

the well-pleaded factual allegations contained within the complaint and must draw all reasonable

inferences in the plaintiff's favor, *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017), but

any legal conclusions proffered by the plaintiff need not be accepted as true, *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained

in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause

of action, supported by mere conclusory statements, do not suffice."). The *Iqbal* Court made clear

4

that "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79.

To survive a Rule 12(b)(6) motion, the plaintiff's well-pleaded factual allegations, accepted as true, must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *Twombly*'s plausibility standard requires that a plaintiff's well-pleaded factual allegations "be enough to raise a right to relief above the speculative level," i.e., allege "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Id.* at 555–56. A speculative claim resting upon conclusory allegations without sufficient factual enhancement cannot survive a Rule 12(b)(6) challenge. *Iqbal*, 556 U.S. at 678–79 ("where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'--'that the pleader is entitled to relief.'" (quoting Fed. R. Civ. P. 8(a)(2)); *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) ("'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" (quoting *Twombly*, 550 U.S. at 557)).

## III.    Analysis

The parties agree that before filing a discrimination action under Title VII, an individual must first timely file an administrative charge of discrimination with the EEOC. *See* 42 U.S.C. § 2000e–5(e)(1). The allegations contained in an administrative charge generally limit the scope of any subsequent judicial complaint. *Hentosh v. Old Dominion Univ.*, 767 F.3d 413, 416 (4th Cir. 2014) (citing *King v. Seaboard Coast Line R.R.*, 538 F.2d 581, 583 (4th Cir. 1976) (stating that a subsequent civil suit "may encompass only the 'discrimination stated in the [EEOC] charge itself

or developed in the course of a reasonable investigation of that charge'")). If "the claims raised under Title VII exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005) (citations omitted).

District courts "are not at liberty to read into administrative charges allegations they do not contain. Instead, persons alleging discrimination have a different form of recourse if they determine that their initial charge does not read as they intended: they may . . . file an amended charge with the EEOC." *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 408 (4th Cir. 2013). A Title VII claim is subject to dismissal "if the EEOC charge alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex." *Equal Emp. Opportunity Comm'n v. 1618 Concepts, Inc.*, 432 F. Supp. 3d 595, 601-02 (quoting *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009), *abrogated on other grounds by Fort Bend*, 139 S. Ct. 1843, 204 L. Ed. 2d 116); *see also Chacko*, 429 F.3d at 509 (same). A panel of the Fourth Circuit has upheld the dismissal of race-based claims for a plaintiff's failure to exhaust when she selected only "national origin" as a basis for the alleged discrimination on her EEOC charge. *See Nnadozie v. Genesis HealthCare Corp.*, 730 F. App'x 151, 163 (4th Cir. 2018) (unpublished).

Here, Defendants contend that because Plaintiff failed to select "national origin" as a basis for discrimination in her EEOC charge and "ethnicity" is not a recognized basis under Title VII, the claims alleged in Plaintiff's third claim for relief must be dismissed. Plaintiff counters that the facts alleged in the charge are sufficient to demonstrate her intention to sue on the basis of national

origin and ethnicity, and these bases would naturally arise from any reasonable investigation of her charge. The court may consider the EEOC charge for its analysis of this matter.[1]

On its face, the charge of discrimination appears to limit the scope of Plaintiff's Title VII claim in this case to "race," the only basis Plaintiff selected for the alleged discrimination. No party disputes that "national origin" is not selected as a basis for Plaintiff's charge, and the allegations therein refer to national origin only in describing Ali as "Indian" and noting Ali's statements that he refused to hire more "Mexicans."[2] Charge, DE 29-1. Plaintiff does not specifically identify her race or national origin in the charge but describes herself "and approximately five employees total" as "either African American or Hispanic." *Id.* Notably, in the Amended Complaint, Plaintiff identifies herself as "Mexican Hispanic or Latino." Am. Compl. at ¶ 50. In so doing, she appears to recognize the difference between race and national origin.

When it passed Title VII of the Civil Rights Act of 1964, Congress listed the separate bases on which discrimination in employment would be prohibited: "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). In determining that Title VII does not prohibit discrimination based on citizenship or immigration status, the Supreme Court found that "national origin discrimination as defined in Title VII encompasses discrimination based on one's ancestry." *See Cortezano v. Salin Bank & Trust Co.*, 680 F.3d 936, 940 (7th Cir. 2012) (citing *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 89 (1973)). In so finding, the Court defined the scope of the term "national

---

[1] The court may consider the charge of discrimination without converting the motion to dismiss into one for summary judgment. *See Brown v. Inst. For Fam. Centered Servs., Inc.*, 394 F. Supp. 2d 724, 729 n.2 (M.D.N.C. 2005). "The EEOC charge is referenced in Plaintiff's complaint [see Am. Compl. ¶¶ 27-29] and is central to Plaintiff's claim in that Plaintiff must rely on it to establish she has exhausted her administrative remedies." *Id.*

[2] The court's conclusion that Plaintiff has failed to exhaust administrative remedies for a national origin claim does not mean that evidence concerning Ali's alleged statements may not properly be considered when adjudicating a discrimination claim based on race.

origin" in Title VII, holding that "Title VII's prohibition against national origin discrimination protects against discrimination in the workplace on the basis of '*where a person was born, or, more broadly, the country from which his or her ancestors came*.'" *Barnette v. Tech. Int'l, Inc.*, 1 F. Supp. 2d 572, 577 (E.D. Va. 1998) (quoting *Espinoza*, 414 U.S. at 88) (emphasis added); *see also McNaught v. Va. Cmty. Coll. Sys.*, 933 F. Supp. 2d 804, 817 (E.D. Va. 2013) (same).

In this case, Plaintiff argues that her charge of discrimination is sufficient to support a claim of national origin discrimination. However, by arguing as "sufficient" the fact that she checked the "Race" box and identified herself as "Hispanic" in the charge, then claimed discrimination based on both race and national origin in the pleading, Plaintiff improperly conflates the terms "race" and "national origin." *See Cortezano*, 680 F.3d at 940; *Barnette*, 1 F. Supp. 2d at 577. The court also recognizes, however, that "EEOC charges must be construed with utmost liberality since they are made by those unschooled in the technicalities of formal pleading." *Alvarado v. Bd. of Tr. of Montgomery Cmty. Coll.*, 848 F.2d 457, 460 (4th Cir. 1988). If this court were to liberally construe Plaintiff's charge of discrimination, to the extent it was drafted by Plaintiff—a non-lawyer—with the EEOC's assistance, the court might overlook her improper conflation of the race and national origin bases of Title VII discrimination. In fact, in her response brief, Plaintiff appears to seek liberal construction. Resp., DE 33 at 10. But, given the strong similarity between the facts set forth in Plaintiff's charge and the allegations set forth in the complaint filed by Plaintiff's lawyer, the court was uncertain whether Plaintiff is actually entitled to liberal construction of her EEOC charge.

In response to the court's May 14, 2021 order seeking supplemental briefing on the question whether Plaintiff was a "lay complainant" or whether she received assistance from a lawyer when she filed her charge of discrimination, Plaintiff has informed the court that "during

the filing of Plaintiff's EEOC charge, she was represented by counsel" and, thus, "the standard regarding 'lay complainants' may not apply in this matter." DE 55 at 2. At the same time, Plaintiff contends that the present motion to dismiss has been rendered moot by Plaintiff's motion to amend her complaint, attached to which is a "corrected"[3] proposed amended pleading that strikes the national origin and ethnicity claims in her third cause of action. *See* DE 51, 54-1.

Contrary to Plaintiff's contention, the motion to dismiss may be rendered moot only if the court were to *grant* Plaintiff's opposed motion seeking leave to amend the First Amended Complaint, in which Plaintiff also "seeks to add Cricket Wireless, LLC as a defendant with factual allegations to support a joint employer theory of liability and common enterprise among all Defendants, including proposed Defendant, as well as allow[ ] Plaintiff to bring this action as a collective and class action under the Fair Labor Standards Act (FLSA) and North Carolina Wage and Hour Act (NCWHA)." DE 54 at 5. The present motion is not rendered moot by Plaintiff's mere filing of an opposed motion and proposed amended pleading.[4]

While the motion to dismiss may not be moot at this time, Plaintiff's motion to amend raises the question whether, by her simple request for leave to "remove" the national origin and ethnicity claims, Plaintiff has conceded the motion to dismiss. The court finds that, even if Plaintiff has not conceded Defendants' motion, the motion to dismiss is granted for Plaintiff's failure to exhaust the available administrative remedies required by Title VII. Plaintiff was represented by counsel when she filed the EEOC charge, and the charge does not reflect a selection of "national origin" as a basis for the alleged discrimination and does not identify Plaintiff by her national

---

[3] This corrected version was filed after the court issued its May 14, 2021 order.

[4] Pursuant to Local Civil Rule 7.1, Defendants' response to the motion is due to be filed by June 4, 2021 and Plaintiff's reply brief, if any, must be filed within fourteen days after service of the response.

origin. *See Nnadozie*, 730 F. App'x at 163 ("Lastly, having checked only the 'national origin' box on her EEOC Charge, [plaintiff]'s race-based claims under Title VII are foreclosed for failure to exhaust administrative remedies"). In addition, although "ethnicity" may be recognized by some courts as interchangeable with "national origin" under Title VII (*see id.* at 162-63 (citing *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 614 (1987) (Brennan, J. concurring))), ethnicity on its own appears nowhere in the statute as a basis of discrimination and may not be alleged as a stand-alone claim.

## IV.     Conclusion

In sum, Plaintiff did not exhaust her administrative remedies under Title VII for her claim of "national origin" discrimination. The EEOC charge, apparently drafted by Plaintiff's counsel, contains neither a selection of national origin as the basis for allegations of discrimination nor an identification of the Plaintiff's national origin. *See Balas*, 711 F.3d at 408 (courts "are not at liberty to read into administrative charges allegations they do not contain"). Therefore, Defendants' motion for partial dismissal of Plaintiff's third claim for relief is GRANTED. Plaintiff's claims for discrimination based on national origin and ethnicity are dismissed with prejudice; her claim for discrimination based on race, as set forth in the third cause of action (*see* DE 24), will proceed in this case.

SO ORDERED this ___21st___ day of May, 2021.


_Richard E Myers II_
RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE